IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

STEVEN LEE MAHOOD,

               Petitioner,

v.                              CIVIL ACTION NO.  2:16-cv-01853

DONNIE AMES, Superintendent,
Mount Olive Correctional Complex,

               Respondent.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 [ECF No. 1].  By Standing Order, this matter is referred to the Honorable Dwane L. Tinsley, United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  For reasons appearing to the Court, it is hereby **ORDERED** that the referral of this matter to the Magistrate Judge is **WITHDRAWN** and Petitioner's Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [ECF No. 1] is **DENIED**.

## I.    *RELEVANT PROCEDURAL HISTORY*[1]

On or about August 7, 2007, Petitioner's wife, Ramona Mahood ("Ramona"), died after suffering "multiple powerful blows to her head[,] face and torso as well as

---

[1] The procedural history herein is derived from the opinions of the Supreme Court of Appeals of West Virginia in Petitioner's direct appeal and state habeas corpus matters, as well as the exhibits of record previously submitted with Respondent's Motion for Summary Judgment [ECF No. 18].

manual strangulation . . . there was also evidence of injury to her genitals and to the area around her anus . . . ." *State v. Mahood*, 708 S.E.2d 322, 325 (W. Va. 2010) ("*Mahood I*"). Petitioner denied killing Ramona, telling police that she arrived home already injured. However, Petitioner's statements to police were inconsistent with those of other witnesses who saw Petitioner and Ramona together earlier that evening. *Id.* at 325. Petitioner was indicted on one count of murder and two counts of possession of stolen vehicles. [ECF No. 18, Ex. 1]. In his trial and direct appellate proceedings, Petitioner was represented by Lee F. Benford, II and Morgan B. Hayes.

### A.   Petitioner's trial and direct appeal.

At trial, Petitioner attempted to establish a diminished capacity defense based upon voluntary intoxication through the testimony of several witnesses who either observed him drinking that evening or who were aware of his history of being intoxicated. However, Petitioner did not testify at his trial, and the defense did not present any expert testimony on the diminished capacity issue. Ultimately, the trial court determined that the evidence was insufficient to warrant a diminished capacity jury instruction. A summary of the relevant trial testimony, as well as the relevant testimony provided at Petitioner's omnibus hearing, is provided in the circuit court's Amended Judgment Order denying the petitioner's first habeas corpus petition. [ECF No. 18, Ex. 16 at 3-12].

Following a four-day jury trial, Petitioner was found guilty of first degree murder without a recommendation for mercy. [*Id.*, Ex. 2]. On April 14, 2009, Petitioner was sentenced to life without mercy. [ECF No. 18, Ex. 3]. He appealed his

judgment to the Supreme Court of Appeals of West Virginia (the "SCAWV") raising the following grounds for relief:

1.   The trial court erred in refusing to give Defendant's proposed voluntary intoxication instruction.

2.   The trial court erred in denying Defendant's motion for mistrial based on the State improperly introducing evidence of Defendant's bad character in the presence of the jury.

[*Id.*, Ex. 4].   The SCAWV granted the Petition for Appeal only on the second ground for relief.   [*Id.*, Ex. 5].   Specifically, the SCAWV considered the following claim: whether Petitioner was "denied a fair trial because the jury heard inadmissible evidence about an adulterous affair he had with a State witness [Lisa Whitehouse]." 708 S.E.2d at 323.   After additional briefing on this claim, the SCAWV affirmed the judgment of the trial court on October 14, 2010.   [*Id.*, Ex. 9].   Petitioner did not seek a writ of certiorari in the Supreme Court of the United States.

### B.   Petitioner's first state habeas corpus proceedings.

On or about January 1, 2010, Petitioner filed a pro se petition for a writ of habeas corpus in the Circuit Court of Jackson County, raising the following grounds for relief:

1.   Denial of 6th Amendment Right and Article III Section 14 of the WV Const. due to five allegedly unqualified jurors sitting on the jury.

2.   Denial of right to present a complete defense under the 6th and 14th amendments for the trial court's alleged failure to give a voluntary intoxication instruction.

3.   Denial of effective assistance of counsel as guaranteed by the West Virginia constitution and the "First, Fifth, Sixth, Eighth

3

and Fourteenth Amendments" to the United States Constitution based on counsel's failure to: (a) determine Petitioner's blood-alcohol level within hours of his arrest or to secure a forensic toxicologist to inform the jury of cognitive and behavioral effects of chronic alcohol dependency; (b) secure a jury free from exception as required by West Virginia statutory and constitutional law; and (c) secure an impartial and unbiased jury.

[ECF No. 18, Ex. 11].

Attorney D. Adrian Hoosier, II ("Hooiser") was then appointed to represent Petitioner and he filed an Amended Petition raising the following grounds for relief:

1.  Denial of fair trial under 6th and 14th amendments because of prejudicial pretrial publicity.

2.  Denial of right to a complete defense for the failure of the trial court to give a voluntary intoxication instruction.

3.  Ineffective assistance of trial counsel for failure to fully investigate and prepare his defense.

4.  Ineffective assistance of trial counsel for failure to present mitigation evidence during the unitary trial.

5.  Severe sentence and [sic] expected, excessive sentence, mistaken advice of counsel as to parole or probation eligibility, and the amount of time served on sentence/credit for time served.

6.  Prosecutorial misconduct in violation of due process and right to a fair trial by introducing improper character evidence.

[*Id.*, Ex. 12].  Then, on or about February 12, 2013, Petitioner filed a Supplemental Amended Petition, which incorporated the above-referenced claims and added the following pro se supplemental claims of ineffective assistance of counsel and cumulative error:

7.   Ineffective assistance of trial counsel for failure to object and move for a mistrial due to repeated questioning of witnesses by the trial court concerning the petitioner's location at the car where hair evidence was found.

8.   Ineffective assistance of trial counsel for failure to object to testimony and prosecutor's argument concerning evidence of sexual assault.

9.   Ineffective assistance of trial counsel for eliciting testimony of State's latent print expert that permitted the jury to draw inference that the petitioner had a prior criminal record.

10.   Ineffective assistance of trial counsel for failure to provide notice of diminished capacity defense and to seek independent expert concerning effects of alcohol and other drugs.

11.   Ineffective assistance of trial counsel for failing to make sufficient argument for mercy.

12.   The petitioner contends that the cumulative effect of the errors of ineffective assistance of counsel denied him a fair trial.

[ECF No. 18, Ex. 13 at 14-33].  Petitioner also filed a motion for default judgment based upon the State's failure to respond to the petition until after it had been supplemented by Petitioner.  [*Id.*, Ex. 14].  An omnibus evidentiary hearing was held on September 5, 2013.  [*Id.*, Ex. 15].  On November 20, 2013, the circuit court denied Petitioner's Supplemental Amended Petition for Writ of Habeas Corpus. [*Id.*, Ex. 16].

Petitioner appealed the denial of his circuit court habeas corpus petition, but only asserted two grounds for relief:

1.   The Circuit Court of Jackson County, West Virginia, erred in denying the Petition for Habeas Corpus relief despite evidence establishing that a diminished capacity defense instruction was warranted.

5

      2.     The Circuit Court of Jackson County, West Virginia, erred in failing to award [Petitioner] Habeas Corpus relief despite the State's failure to timely respond [to the petition].

[ECF No. 18, Ex. 19]. Petitioner later moved for leave to file a supplemental brief raising additional grounds for relief, which was refused by the SCAWV. [*Id.*, Ex. 20]. On March 16, 2015, the SCAWV found no error on either ground for relief raised in the petition for appeal and affirmed the judgment of the circuit court. *Mahood v. Ballard*, No. 14-0026, 2015 WL 1244343 (W. Va. Mar. 16, 2015) ("*Mahood II*"). [ECF No. 18, Ex. 17]. As relevant here, the SCAWV affirmed the circuit court's finding that Petitioner's claim of ineffective assistance of counsel for failing to properly investigate and offer a diminished capacity instruction was meritless because there was no evidence adduced at trial to suggest that he had a diminished capacity at the time the crime was committed. *Id.* at *8.

    C.    **Petitioner's section 2254 petition.**

On February 26, 2016, Petitioner filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, which raises the following grounds for relief:

      1.     Petitioner was denied his constitutional right to a fair and impartial jury trial and equal protection because five jurors were statutorily disqualified from serving on the jury and there was "extensive, negative, and prejudicial" pretrial publicity.

      2.     Petitioner was denied meaningful and effective assistance of counsel as secured by the 1st, 5th, 6th, 8th, and 14th Amendment. Specifically, the petitioner contends that his trial counsel failed to:

         (a)    Properly pursue a diminished capacity defense, including presenting the testimony of a forensic toxicologist;

    (b)    Secure a jury pool of prospective jurors free from exception;

    (c)    Consider or seek a bifurcated trial;

    (d)    Object to prejudicial testimony that was unrelated to an element of the crime alleged in the indictment;

    (e)    Cross-examine Dr. Kaplan; and

    (f)    Present mitigation evidence and argument in a unitary trial.

3.    Petitioner was denied due process of law as secured by the 5th and 14th Amendments based on the trial court's refusal to instruct the jury that Petitioner's voluntary ingestion of alcohol might negate the specific intent necessary for a conviction of first degree murder.

4.    Petitioner's right to due process of law as guaranteed by the 5th and 14th Amendments was violated by prosecutorial misconduct when Dr. Kaplan (the State's expert witness) was permitted to testify to facts outside the information contained in his autopsy report. Petitioner's counsel was ineffective for failing to object to this testimony.

5.    Petitioner's right to due process of law as secured by the 5th and 14th Amendments was violated when the Circuit Court denied his motion for acquittal at the conclusion of the State's case-in-chief because there was insufficient evidence to support a conviction.

[ECF No. 1].

On September 13, 2018, the undersigned entered a Memorandum Opinion and Order finding that all grounds in Petitioner's § 2254 petition, except for Ground 2(a) were not properly exhausted in the state courts. [ECF No. 30 at 7]. The Court further found that the record then before this Court did not conclusively demonstrate that

Petitioner had knowingly and intelligently waived his unexhausted claims in the state courts such that a state procedural bar would render the unexhausted claims procedurally defaulted.  [*Id.* at 9].  Thus, the Court denied Respondent's Motion for Summary Judgment and this civil action was stayed and held in abeyance to permit Petitioner to attempt to exhaust any available state court remedies concerning his unexhausted claims.  [*Id.* at 10].

### D.   Petitioner's second state habeas corpus proceedings.

On September 28, 2018, Petitioner, proceeding pro se, filed a second habeas corpus petition in the Circuit Court of Jackson County (Case No. 18-C-83), raising his unexhausted claims and further arguing that his habeas counsel was ineffective in not adequately raising the claims of prejudicial pretrial publicity and diminished mental capacity. *Mahood v. Ames*, No. 19-0230, 2020 WL 2911622, at *1 (W. Va. June 3, 2020) ("*Mahood III*").  By order entered on February 19, 2019, the circuit court rejected Petitioner's argument that habeas counsel provided ineffective assistance in his initial habeas proceedings, and further found that the doctrine of res judicata precluded Petitioner from asserting "all matters [previously] raised and as to all matters known or with reasonable diligence could have been known."   *Id.*  Accordingly, the circuit court summarily dismissed Petitioner's second habeas petition. *Id.*

On June 3, 2020, the SCAWV affirmed the denial of Petitioner's second state habeas corpus petition, finding in pertinent part:

8

Petitioner argues that the doctrine of res judicata does not apply to this case by alleging that he was not advised of his obligation under *Losh*[2] to raise all applicable habeas grounds in the omnibus proceeding or have them deemed waived.  Petitioner points to the absence of a *Losh* list in *Mahood II*.  As we explained in *Mahood II*, "[t]he checklist of grounds typically used in habeas corpus proceedings, commonly known as 'the *Losh* list,' originates from [our decision in *Losh*]" 2015 WL 1244343, at *1 n.2.  We find that the absence of a *Losh* list cannot be attributed to the circuit court as, prior to the September 10, 2013, omnibus hearing in *Mahood II*, the court "granted petitioner an additional thirty days to file a final petition and a '*Losh* list'" in April of 2013.  *Id.* at *1.  Our decision in *Mahood II* further reflects that petitioner already knew to raise all applicable claims in the omnibus proceeding because, "[a]lthough still represented by counsel, petitioner, pro se, in February of 2013, filed a document titled 'supplemental claims to be added to amended petition for writ of habeas corpus.'"  *Id.*  Therefore, we find that the circuit court did not err in finding that the doctrine of res judicata applies to this case.

*Id.* at *2.  Petitioner argued, as an exception to the application of res judicata, that his habeas counsel had provided ineffective assistance of counsel in addressing his claims concerning pretrial publicity and a diminished capacity defense.  However, the appellate court found that those claims were previously raised by counsel and adjudicated by the circuit court, and any other claims of ineffective assistance of habeas counsel asserted on appeal were not raised in his second habeas petition in the circuit court and, thus, would not be addressed on appeal.  *Id.* at *2 and n.2.  Therefore, the SCAWV affirmed the summary dismissal of Petitioner's second state habeas petition.  *Id.* at *3.

---

[2]  Referring to *Losh v. McKenzie*, 277 S.E.2d 606 (W. Va. 1981), in which the SCAWV held that an omnibus hearing under W. Va. Code § 53-4A-1 is res judicata as to all matters raised therein, or those claims which should have, with reasonable diligence, been known to the petitioner.  The failure to raise claims under those circumstances generally constitutes a knowing and intelligent waiver of such claims and bars them from consideration in future proceedings.

The stay herein has been lifted and the Court finds that this matter is appropriate for resolution absent further briefing.

## II.    STANDARDS OF REVIEW

### A.    Standards for relief under 28 U.S.C. § 2254(d) and (e).

Title 28 U.S.C. § 2254(d), which was adopted as part of the Anti-terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court held that under the "contrary to" clause, a federal court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts.  The Court further held that under the "unreasonable application" test, a federal court may grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court only if the state

court identifies the correct governing principle from the Supreme Court's decision, but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 413.

Moreover, the AEDPA contains a presumption that a state court's factual findings are correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Where a claim has been summarily refused, the Court must simply determine whether that decision was legally and factually reasonable under clearly-established federal law. *See Bell v. Jarvis*, 236 F.3d 149, 158 (4th Cir. 2000) (When a state court summarily rejects a claim without setting forth its reasoning, the federal court reviews the record and the clearly-established Supreme Court law, but still "confine[s] [its] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.'").

## B.  Exhaustion requirement under 28 U.S.C. § 2254(b).

Section 2254(b)(1)(A) of Title 28 of the United States Code, states that a petition for a writ of habeas corpus filed in a federal district court by a prisoner in state custody shall not be granted, unless it appears that the applicant has exhausted the remedies available in the state courts, or if the state has waived the exhaustion requirement. 28 U.S.C. §§ 2254(b)(1)(A), (b)(3). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one

11

complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also Beard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (Exhaustion requires the habeas petitioner to "fairly present the substance of his claim to the state's highest court.")

In West Virginia, prisoners may exhaust their available state court remedies either by stating cognizable federal constitutional claims in a direct appeal, or by stating such claims in a petition for a writ of habeas corpus in a state circuit court pursuant to West Virginia Code § 53-4A-1, followed by filing a petition for appeal from an adverse ruling to the SCAWV. *Moore v. Kirby*, 879 F. Supp. 592, 593 (S.D.W. Va. 1995); *McDaniel v. Holland*, 631 F. Supp. 1544, 1545 (S.D.W. Va. 1986). A petition for a writ of habeas corpus filed under the original jurisdiction of the SCAWV that is denied with prejudice following a determination on the merits will also exhaust the prisoner's state court remedies. *See Moore*, 879 F. Supp. at 593; *McDaniel*, 631 F. Supp. at 1546; *see also, Meadows v. Legursky*, 904 F.2d 903, 908-909 (4th Cir. 1990) (*abrogated on other grounds, Trest v. Cain*, 522 U.S. 87 (1997)).

Additionally, Petitioner must show that the claims he raised in state proceedings are the same as the claims he now seeks to raise in his federal habeas proceeding. *See Pitchess v. Davis*, 421 U.S. 482, 487 (1975); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). The claims in both courts must "fairly present" the "substance" of the claim, based upon the same factual grounds, and must allege that the same federal constitutional right was violated. *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

### C.     Procedural default doctrine.

The doctrine of procedural default bars litigation of claims in a federal habeas corpus petition that were not fully adjudicated on their merits in state court where such claims are barred from further litigation in state court by operation of a state procedural rule. *See Boothe v. Ballard*, No. 2:14-cv-25165, 2016 WL 1275054 *46 (S.D. W. Va. Mar. 31, 2016), *aff'd*, 670 F. App'x 193 (4th Cir., Nov. 18, 2016).  "The procedural default doctrine operates to bar a federal habeas claim 'only if the rule of procedure . . . is determined to be an adequate and independent state-law ground for decision.'" *Id.* at *47 (quoting *Thomas v. Davis*, 192 F.3d 445, 450 (4th Cir. 1999); *see also Maples v. Thomas*, 565 U.S. 266, 280 (2012) ("As a rule, a state prisoner's habeas claims may not be entertained by a federal court when (1) a state court has declined to address those claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds.").

However, "[t]he doctrine barring procedurally defaulted claims from being heard is not without exceptions." *Martinez v. Ryan*, 566 U.S. 1, 10 (2012); *cf. Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) ("Although the doctrine of procedural default limits federal habeas review of state convictions, it does not provide an absolute bar.").  In fact, the procedural default doctrine provides for two exceptions where a petitioner can show: (1) cause for the default and prejudice therefrom; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. *See*

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Richmond v. Polk*, 375 F.3d 309, 323 (4th Cir. 2004).

"Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the procedural rule. *Maples, supra*, 565 U.S. at 280. The Supreme Court has not "identified with precision exactly what constitutes 'cause' to excuse procedural default." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Generally, ineffective assistance of habeas counsel is not considered an external factor that would excuse the failure to exhaust a claim for habeas corpus relief. *See Maples*, 565 U.S. at 280 ("Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'") (citing *Coleman*, 501 U.S. at 753); *but see Martinez*, 566 U.S. at 9-10 (finding "cause" based upon counsel's failure to raise claims of ineffective assistance of trial counsel in initial habeas proceeding).

*Boothe, supra*, summarized the procedural default doctrine as follows:

The procedural default doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). In addition, "[i]f claims were not exhausted in state court but would now be procedurally barred if brought in state court, then federal courts can treat the claims as if they were procedurally defaulted in the state courts." *Clagett v. Angelone*, 209 F.3d 370, 378 (4th Cir. 2000) (citing *Coleman*, 501 U.S. at 735 n.1). "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." *Gray v. Netherland*, 518 U.S. 152, 162 (1996) (citations omitted). "The procedural default doctrine . . . appl[ies] . . . whether the default in question occurred at trial, on appeal, or on state

collateral attack." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citations omitted).

2016 WL 1275054 at *46.

## III. DISCUSSION

### A. *Sua Sponte* Determination of Procedural Default.

The Court previously determined that all grounds in Petitioner's § 2254 petition, except for Ground 2(a) were not exhausted prior to the filing of Petitioner's second state habeas corpus petition. Now that Petitioner's second state habeas corpus proceedings have concluded, it is apparent from the state court record that Grounds 1, 2(b)-2(f), 3, 4, and 5 are procedurally defaulted. Although, presently, there is no dispositive motion pending, "a federal habeas court possesses the authority to address, in its discretion, whether there exists an unexcused adequate and independent state-law ground for a denial of relief from a challenged conviction or sentence." *See generally Gray v. Netherland*, 518 U.S. 152, 162 (1996) (stating that procedural default "provides an independent and adequate state-law ground for the conviction and sentence"). Thus, the Court, guided by the interests of comity and judicial efficiency, may address the issue of procedural default *sua sponte*. *Yeatts v. Angelone*, 166 F.3d 255, 262 (4th Cir. 1999); *see also Boothe*, 2016 WL 1275054, at *40-41. Here, the issue of procedural default was previously raised and addressed in the parties' briefs concerning Respondent's motion for summary judgment. Thus, Petitioner was on notice of the procedural default issue earlier in the case and was permitted to return to the state courts to attempt to remedy such default.

However, the SCAWV's decision in *Mahood III* demonstrates that the state courts have now applied the doctrine of res judicata to prohibit a finding on the merits of Petitioner's defaulted claims.  2020 WL 2911622, at *2.  The SCAWV further emphasized that, even in the absence of a *Losh* list, "[P]etitioner already knew to raise all applicable claims in the omnibus proceeding" because, in February of 2013, he filed a pro se document containing "supplemental claims to be added to petition for writ of habeas corpus," yet he failed to raise these unexhausted claims.  *Id.*  At any rate, the state courts now have made it clear that Petitioner is procedurally barred from further pursuing those claims in the state courts.  The Fourth Circuit has stated that a "federal habeas court does not have license to question a state court's finding of procedural default or to question whether the state court properly applied its own law."  *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010).  Thus, the undersigned **FINDS** that Grounds 1, 2(b)-2(f), 3, 4, and 5 are procedurally defaulted.  However, the Court will further address whether Petitioner can establish cause and prejudice to excuse such procedural default.

## B.    Exceptions to procedural default.

As noted above, "[t]he doctrine barring procedurally defaulted claims from being heard is not without exceptions." *Martinez*, 566 U.S. at 10; *cf. Sharpe*, 593 F.3d at 377 ("Although the doctrine of procedural default limits federal habeas review of state convictions, it does not provide an absolute bar.").  In fact, the procedural default doctrine provides for two exceptions where a petitioner can show: (1) cause for the default and prejudice therefrom; or (2) that failure to consider the claims will result

16

in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Richmond v. Polk*, 375 F.3d 309, 323 (4th Cir. 2004).

"Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the procedural rule. *Maples, supra*, 565 U.S. at 280. The Supreme Court has not "identified with precision exactly what constitutes 'cause' to excuse procedural default." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Generally, however, ineffective assistance of habeas counsel is not considered an external factor that would excuse the failure to exhaust a claim for habeas corpus relief. *See Maples*, 565 U.S. at 280 ("Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'") (citing *Coleman*, 501 U.S. at 753); *but see Martinez*, 566 U.S. at 9-10 (finding "cause" based upon counsel's failure to raise claims of ineffective assistance of trial counsel in initial habeas proceeding). Here, the only apparent "cause" offered by Petitioner for the failure to exhaust his claims is ineffective assistance by his habeas counsel in failing to exhaust his claims in his initial habeas proceedings.

In *Martinez*, the Supreme Court established a "narrow" exception to procedural default, holding: "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. at 17. This limited

17

exception does not extend to ineffective assistance of appellate counsel. *See Davila v. v. Davis*, 137 S. Ct. 2064, 2065 (2017).

Thus, a state prisoner may establish cause under *Martinez* by showing (1) that the defaulted ineffective-assistance-of-trial-counsel claim is "substantial," (2) that counsel in the initial state collateral-review proceeding was ineffective or absent, and (3) that state law required the ineffective-assistance-of-trial-counsel claim to be raised in the initial collateral-review proceeding as opposed to on direct review. *See Trevino v. Thaler*, 569 U.S. 413, 423 (2013). A "substantial claim" is one that has "some merit," a standard that the *Martinez* Court likened to that governing the issuance of a certificate of appealability under 28 U.S.C. § 2253(c)(2), which is if "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *See Martinez*, 566 U.S. at 14 (citing *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)); *Owens v. Stirling*, 967 F.3d 396, 422–23 (4th Cir. 2020).

As Grounds 1, 3, 4, and 5 of Petitioner's § 2254 petition do not concern ineffective assistance of trial counsel, the *Martinez* exception does not apply to those claims and there is no other apparent cause to excuse the procedural default of those claims. Additionally, the unexhausted ineffective assistance of trial counsel claims contained in Ground 2 of Petitioner's section 2254 petition cannot meet the *Martinez* exception. The Court will address each of those claims in turn.

Ground 2(b)

18

In Ground 2(b), Petitioner contends that his trial counsel failed to secure a jury pool free from exception. [ECF No. 1 at 7]. He relies upon trial counsel's failure to object to the inclusion of five prospective jurors who were statutorily ineligible, under state law, to serve because they had previously served on a jury within two years of his trial. [Id.] Petitioner does not allege that any of these five prospective jurors were somehow actually biased or that their service on his jury prejudiced the outcome of the proceedings. Consequently, Petitioner has not satisfied the prejudice prong of *Strickland v. Washington*, 466 U.S. 688 (1984) and, thus, cannot demonstrate a Sixth Amendment violation therefrom. Therefore, even if the *Martinez* exception is implicated by the failure of habeas counsel to pursue and exhaust this claim, it is not a substantial claim of ineffective assistance of trial counsel and will not excuse the procedural default thereof. Additionally, there is no other valid exception to overcome the procedural default of these claims.

### Grounds 2(c) and 2(f)

In Ground 2(c), Petitioner alleges that his trial counsel failed to consider or seek a bifurcated trial. [ECF No. 1 at 7]. In Ground 2(f), he contends that his trial counsel was also ineffective because they failed to present mitigating evidence in the unitary trial. [*Id.* at 9]. These claims were fairly addressed in Ground 4 of Petitioner's Supplemental Amended Petition filed in the circuit court, which rendered substantive rulings thereon. [ECF No. 18, Ex. 13 at 8-10; Ex. 16 at 18-19]. However, those claims were then abandoned in Petitioner's habeas appeal. The *Martinez* exception does not apply under those circumstances and there is no other valid

19

exception to overcome the procedural default of these claims.

<u>Grounds 2(d) and 2(e)</u>

In Ground 2(d) of his section 2254 petition, Petitioner contends that his trial counsel failed to object to testimony offered by the Chief Medical Examiner, Dr. James Kaplan ("Kaplan"), stating that it appeared that someone had inserted an object into the victim's rectum "in a forceful manner before she died." [ECF No. 1 at 8]. Petitioner contends that this testimony was unduly prejudicial because it was unrelated to an element of the crime of murder and was not supported by the evidence of Kaplan's autopsy report. [*Id.*] In Ground 2(e) of the petition, Petitioner further asserts that defense counsel was ineffective because they failed to cross-examine Kaplan. [*Id.*] These issues were addressed in Ground 8 of Petitioner's Supplemental Amended Petition filed in the circuit court and were specifically addressed and ruled on by the circuit court in its final order. [ECF No. 18, Ex. 13 at 19-24; Ex. 16 at 16-17]. However, these claims were then abandoned in Petitioner's habeas appeal. Thus, the *Martinez* exception is inapplicable, and there is no other valid exception to excuse the procedural default of these claims of ineffective assistance of trial counsel.

For these reasons, the Court **FINDS** that Petitioner has not established cause and prejudice to overcome the procedural default of Grounds 1, 2(b)-2(f), 3, 4, and 5 of his § 2254 petition. Accordingly, it is hereby **ORDERED** that those claims be **DISMISSED** as procedurally barred.

**B.   Petitioner is not entitled to relief under § 2254 on Ground 2(a).**

In Ground 2(a) of his § 2254 petition, which was fully exhausted in Petitioner's state proceedings, Petitioner contends that his trial counsel provided ineffective assistance when they failed to properly establish a diminished capacity defense, including failing to consult or employ a forensic toxicologist to establish a voluntary intoxication defense and to obtain a diminished capacity jury instruction. [ECF No. 1 at 6-7]. In *Strickland, supra*, 466 U.S. 688 (1984), the Supreme Court adopted a two-prong test for determining whether a defendant received adequate assistance of counsel.   A defendant must show (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   *Id.* at 687- 91.  Moreover, "judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Furthermore, the AEDPA "adds a layer of respect for a state court's application of the legal standard." *Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997).   There is a strong presumption that trial counsel's conduct was within the wide range of reasonable professional assistance, *id.* at 689, and the burden is on the petitioner to show prejudice.  *Hutchins v. Garrison*, 724 F.2d 1425 (4th Cir. 1983).  Further, "[a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  A petitioner may not merely speculate about potential prejudice but must "affirmatively

prove" that the result of the proceedings would have been different but for the deficient performance of trial counsel. *Id.* at 693.

As previously argued by Respondent herein, a defendant seeking to pursue a diminished capacity defense in West Virginia must introduce expert testimony "regarding a mental disease or defect that rendered the defendant incapable, at the time the crime was committed, of forming a mental state that is an element of the crime charged." Syl. Pt. 3, *State v. Joseph*, 590 S.E.2d 718, 720 (W. Va. 2003). Moreover, voluntary drunkenness "is generally never an excuse for a crime, but where a defendant is charged with murder, and it appears that the defendant was too drunk to be capable of deliberating and premeditating, in that instance intoxication may reduce murder in the first degree to murder in the second degree, as long as the specific intent did not antedate the intoxication." Syl. Pt. 2, *State v. Keaton*, 272 S.E.2d 817, 818 (W. Va. 1980). [ECF No. 19 at 21-22].

Thus, "[i]ntoxication to reduce an unlawful homicide from murder in the first degree, must be such as to render the accused incapable of forming an intent to kill, or of acting with malice, premeditation or deliberation." *Id.* at Syl. Pt. 3, (quoting Syl. Pt. 4, *State v. Burdette*, 63 S.E.2d 69 (W. Va. 1950)). Accordingly, there must be evidence, including expert testimony, that the defendant was incapable of forming the requisite intent to present an affirmative defense of diminished capacity and, absent such evidence, the trial court may not give an instruction on such a defense. *See generally* Syl. Pts. 2 and 3, *Alley v. Charleston Area Med. Ctr., Inc.*, 602 S.E.2d 506, 511 (W. Va. 2004).

22

Here, the SCAWV rejected Petitioner's claim that his counsel was ineffective in failing to pursue a diminished capacity defense and adopted and incorporated the circuit court's reasoning for denying habeas corpus relief. *Mahood II*, 2015 WL 1244343, at *2-3. [ECF No. 18, Ex. 17]. The circuit court found that there was "absolutely no evidence shown to the court at the Jury trial or at the Habeas hearing that Petitioner Mahood was suffering from mental disease or defect sufficient to make out a jury issue on 'diminished capacity.'" [ECF No. 18, Ex. 16 at 14]. The circuit court further opined:

> As for trial counsel's failure to obtain an expert, at the evidentiary hearing it was undisputed that the defense did seek out an expert, but that the expert in question was unable to provide a favorable report. Dr. Miller and Mr. Benford both testified that they consulted following Dr. Miller's interview of the Petitioner, and it was mutually agreed that calling Dr. Miller to testify would, if anything, be detrimental to the Petitioner. In fact, Dr. Miller's recollection of the interview was that the Petitioner admitted to having a full recollection of murdering his wife, and admitted that he was solely and completely responsible for her death. The case law requires expert testimony before a diminished capacity defense is available. However, trial counsel in this case could not have called their expert to testify, unless they wanted to assure: (a) that their client was convicted; and/or (b) that the trial court denied their request for a diminished capacity defense.

[*Id.*]

The circuit court's opinion further found that Petitioner's contention that he was intoxicated to the point of not being responsible and suffered from "alcohol-induced amnesia" was not credible because, during the omnibus hearing, he "vividly described the argument that precipitated the murder" and his recollection of the events that night was "crystal clear" up until the actual act of murder. [*Id.* at 15].

23

The SCAWV then found that "our review of the record supports the circuit court's decision to deny post-conviction habeas corpus relief on the error he assigns in this appeal, which was argued below." *Mahood II*, 2015 WL 1244343, at *2. [ECF No. 18, Ex. 20 at 3].

The record clearly demonstrates that defense counsel investigated the intoxication issue and retained an expert witness to examine the viability of such a defense. However, prior to trial, the expert, Dr. Miller, advised defense counsel that he could not render an opinion that Petitioner was so intoxicated that he could not formulate the specific intent to kill his wife deliberately and premeditatedly. Thus, despite trial counsel's attempt to develop evidence of Petitioner's intoxication on the night of the murder and his history of intoxication, without such expert testimony and other sufficient evidence to support such a defense, the trial court properly refused to instruct the jury on voluntary intoxication and diminished capacity.

The record herein clearly demonstrates that Petitioner has not established that his trial counsel's conduct surrounding the attempted development and presentation of a diminished capacity defense fell below an objective standard of reasonableness. Nor can Petitioner demonstrate the requisite prejudice to support a violation of his Sixth Amendment right to the effective assistance of counsel in accordance with *Strickland*. Accordingly, the Court **FINDS** that the state courts' decisions denying Petitioner habeas corpus relief on this basis were neither contrary to, nor an unreasonable application of, clearly established federal law, and were not

based on an unreasonable determination of the facts presented in the state court proceedings. Thus, Ground 2(a) of Petitioner's § 2254 petition is **DENIED**.

## IV. CONCLUSION

For the reasons stated herein, it is hereby **ORDERED** that Petitioner's Petition for a Writ of Habeas Corpus [ECF No. 1] is **DENIED** and this civil action is **DISMISSED**. The Court has also considered whether to grant a certificate of appealability. *See* 28 U.S.C. § 2253(c). A certificate will be granted only if there is "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this Court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *See Miller–El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 437, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683–83 (4th Cir. 2001). The Court finds that the standard is not satisfied herein and, thus, **DENIES** a certificate of appealability. Pursuant to Rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. § 2254, Petitioner may not appeal the Court's denial of a certificate of appealability, but he may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

The Court **DIRECTS** the Clerk to remove this action from the Court's docket and to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 28, 2024

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

25